**SO ORDERED.**

**SIGNED this 31 day of May, 2011.**

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

MYRA GUZMAN,                                    CASE NO. 10-10169-8-JRL

   DEBTOR.                                      Chapter 13

_____

**ORDER**

This matter came before the court on an objection to valuation and treatment of claim filed by the chapter 13 trustee, the Town of Wallace and the North Carolina Interlocal Risk Management Agency ("NCIRMA"). The matter also came before the court on the chapter 13 trustee's motion to dismiss. On April 21, 2011, the court conducted a hearing in Wilmington, North Carolina. The single issue raised by these filings is whether the debtor's unsecured claims exceed the ceiling of 11 U.S.C. § 109(e).

Prior to filing bankruptcy, the debtor was involved in a motor vehicle accident on January 14, 2009, which resulted in injuries to Henry David Campbell, a volunteer fireman for the Town of Wallace. As a result of the injuries he sustained, NCIRMA, the workers' compensation carrier for the Town of Wallace, provided workers' compensation benefits to Mr. Campbell.

On February 15, 2010, NCIRMA and the Town of Wallace filed a verified subrogation complaint for recovery of workers' compensation benefits paid by NCIRMA (the "subrogation complaint") in the Superior Court of Duplin County, case No. 10-CVS-109.  In the complaint, the plaintiffs alleged that the debtor's negligence directly and proximately caused the accident with Mr. Campbell. The plaintiffs then asserted that as a result of the debtor's alleged negligence, they are entitled to recover the workers' compensation benefits provided to Mr. Campbell under a subrogation claim pursuant to North Carolina General Statute § 97-10.2.

On December 10, 2010, the debtor filed a chapter 13 bankruptcy petition, triggering the automatic stay and prohibiting the continuation of the subrogation complaint. 11 U.S.C. § 362(a). Schedule F of the debtor's bankruptcy petition lists NCIRMA and the Town of Wallace as creditors, each holding unsecured claims designated as contingent, unliquidated, and disputed and each with an unknown claim amount.  NCIRMA and the Town of Wallace filed separate proofs of claim in the debtor's bankruptcy proceeding, each in the amount of $552,227.89.[1]  The basis for each claim was the aforementioned subrogation complaint.  The debtor filed objections to these proofs of claim, stating that each claim of a lien, "if any, is against the payment that *might* be obtained in a tort action against the debtor," and that the subrogation complaint is procedurally defective and does not comply with  North Carolina General Statute § 97-10.2.

The trustee, the Town of Wallace and NCIRMA assert that the unsecured claim for $552,227.89 is not contingent and is liquidated.  Thus, this amount exceeds the unsecured debt

---

[1] The proofs of claim were filed on January 20, 2011.  The trustee contends that the claims appear to be duplicates of one another in which one is the base claim and the other, the subrogation claim. For the purposes of determining whether the unsecured debt limit is surpassed, this matter need not be resolved by the court in the present order.

limit placed on chapter 13 debtors pursuant to 11 U.S.C. § 109(e). For this reason, the trustee moves to dismiss because the debtor is not eligible for relief under chapter 13 of the Bankruptcy Code.

## DISCUSSION

The court is persuaded that NCIRMA and the Town of Wallace have standing to bring the subrogation complaint, filed in Duplin County Superior Court, pursuant to North Carolina General Statute § 97-10.2(c), and therefore standing to file their proofs of claim. Specifically, North Carolina General Statute § 97-10.2(c) provides that "if settlement is not made and summons is not issued within [12 months of the injury or death] . . . then either the employee or the employer shall have the right to proceed to enforce the liability of the third party [tortfeasor] by appropriate proceedings." NC Gen. Stat. § 97-10.2(c). The Court of Appeals of North Carolina discussed the objective of the statute, noting that it was "not enacted to enable a third party tort-feasor to defeat a lawful claim. It was enacted to protect the employee, employer and the employer's workmen's compensation carrier." Long v. Coble, 11 N.C. App. 624, 629, 182 S.E.2d 234, 238 (1971). Mr. Campbell did not bring a claim against the debtor within the prescribed 12-month period following the accident. Therefore, pursuant to the statute, the Town of Wallace is permitted to bring a claim against the debtor to enforce liability and has done so through the filing of the subrogation complaint.

To be eligible for relief under chapter 13 of the Bankruptcy Code, the debtor's aggregate unsecured debt must not exceed $336,900 as of the petition date. 11 U.S.C. § 109(e). To be included in the unsecured debt limit calculation, the unsecured debt must be classified as noncontingent and liquidated. Id. Specifically, 11 U.S.C. § 109(e) provides that:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $336,900 and noncontingent, liquidated, secured debts of less than $1,010,650 . . . may be a debtor under chapter 13 of this title.

There are conflicting lines of authority concerning the classification of debt as contingent. One school of thought concludes that claims arising from tortious conduct, which have not yet been adjudicated and reduced to judgment, are automatically deemed contingent. See In re All Media Properties, Inc., 5 B.R. 126, 133 (Bankr. S.D. Tex. 1980) (stating that an underlying "tort claim for negligence" automatically classifies the debt as contingent since the presumption is that the "tort feasor would be liable only if it were so established by a competent tribunal"). Recent cases, however, follow a more logical approach. Debts arising from tortious conduct are not automatically deemed contingent, but rather, the court must determine whether all of the events that give rise to debtor's alleged liability occurred prior to the bankruptcy filing. If all of the events giving rise to liability occured prior to the bankruptcy filing, the debt is not contingent. See In re McGarry, 230 B.R. 272, 275 (Bankr. W.D. Pa.1999) (holding that while the securities fraud claims are disputed and listed as contingent by the debtor, the debt is actually not contingent since "[a]n obligation is noncontingent when all of the events giving rise to liability for the debt occurred prior to a debtor's bankruptcy filing."); In re Ristic, 142 B.R. 856, 857 (Bankr. E.D. Wis. 1992) (holding the debt to be not contingent because "the events upon which the liability is based occurred before [the debtor] filed his chapter 13 petition. The fact that the debt was not reduced to judgment before the chapter 13 petition was filed does not make the debt contingent."). Most recently, in the Eastern District of North Carolina it was held that a debt's "contingency" "relates to the time or circumstance under which the liability arises. In this connection liability does not mean the same as judgment or remedy." In re Melvin, Case No. 05-

02621 (Bankr. E.D.N.C. May 22, 2006) (citations omitted) (holding the debt not contingent as the events giving rise to the liability occurred prepetition).

Pursuant to the plain language of the statute, the determination of whether a debt is contingent is made "on the filing date." 11 U.S.C. § 109(e). The debtor argues that since the claim arises out of a tort action, the claim is contingent on the judicial outcome of the subrogation complaint, which as of the filing date and as of the date of this hearing, has yet to be adjudicated in Duplin County Superior Court. While the subrogation complaint has not been reduced to judgment, the debtor's alleged liability to NCIRMA and the Town of Wallace was triggered by the automobile accident in January 2009, injuring Mr. Campbell. There is no question that the underlying negligence claim is disputed, as is indicated in the debtor's Schedule F and in the debtor's objections to the proofs of claim filed by NCIRMA and the Town of Wallace. The debtor's accident with Mr. Campbell did occur approximately one year prior to the debtor's chapter 13 bankruptcy filing and all of the events that could have occurred to trigger liability, occurred prior to the bankruptcy filing. The debtor's liability is not dependent on the occurrence of a future event and Mr. Campbell's injuries, for which NCIRMA and the Town of Wallace compensated him, have already been sustained. Thus, the unsecured claim held by the NCIRMA and the Town of Wallace is not contingent as of the filing date.

The eligibility calculation under chapter 13 also requires the unsecured debt be "liquidated." 11 U.S.C. § 109(e). Courts have taken varying approaches in classifying an unsecured debt as "liquidated." Some deem a debt to be "liquidated" if it is "certain as to amount." In re Lewis, 157 B.R. 253, 255 (Bankr. E.D.Va. 1993) (citing In re Claypool, 142 B.R. 753, 754 (Bankr. E.D. Va. 1990)). Others hold that a liquidated debt is one that "is readily and

precisely determinable, where the claim is determinable by reference to an agreement or by simple computation." U.S. v. May, 211 B.R. 991, 996 (Bankr. M.D. Fla. 1997). Other courts do not accept such a simplified analysis but rather base their determination on whether an "extensive and contested evidentiary hearing" is necessary to determine the amount of the debt; in other words, the debt is not liquidated if it requires "additional processing by the court." In re Nicholes, 184 B.R. at 82.

Even where the debt arises from a claim of tortious conduct in which the debtor disputes liability, a debt has nevertheless been qualified as liquidated if the amount is readily ascertainable by a simple mathematical calculation. In re Clark, 91 B.R. 570 (Bankr. D. Colo., 1988) (under a subrogation claim, the insurance carrier was able to identify the exact dollar amount paid under the insurance policy even though the liability was disputed by the debtor). Another court discussed this analysis, stating that:

> [liquidation] is a function of the ease and the manner in which the amount due can be determined . . . . Where the value of the claim or the amount of damages . . . can only be determined through . . . judgment or discretion, the claim is unliquidated. If there is no uncertainty, so that simple mathematics can supply this value, the claim is liquidated.

In re McGovern, 122 B.R. 712, 716 (Bankr. N.D. Ind. 1989) (holding that the debt was liquidated because it could be ascertained by using simple arithmetic); See also In re Reader, 274 B.R. 893, 897 (Bankr. D. Colo. 2002) (holding the debt liquidated because it could be "readily determined" and further, that this classification will not be affected merely because the "[d]ebtor may raise defenses or counterclaims" or "whether the claim had been reduced to judgment").

Other courts have taken the opposite approach and have classified debt as not liquidated when the tort claim was not yet reduced to judgment, since the "determination of both liability

-6-

and damages ordinarily requires the exercise of judgment by the factfinder," and therefore the value is not ascertainable by a simple calculation. In re Arcella-Coffman, 318 B.R. 463, 473 (Bankr. N.D. Ind. 2004). In conjunction, if there is a substantial dispute as to the liability of the parties, a debt can be classified as not liquidated. In re King, 9 B.R. 376, 378 (Bankr. Or. 1981). However, recent cases have held that even in the presence of a substantial dispute, a debt has been deemed liquidated where the debt amount was easily determinable using simple arithmetic. In re Huelbig, 299 B.R. 721 (Bankr. D.R.I. 2003). Just as a disputed debt does not automatically render a claim contingent, a disputed claim, where the liability has not yet been assigned to the respective parties, has also been held not to affect the classification of a debt as liquidated. In re Wiencko, 275 B.R. 772, 779 (Bankr. W.D.Va. 2002) (noting that "[n]owhere in the Bankruptcy Code does it require that a debt be based on a final order to be determined liquidated."). In fact, courts have held that deeming every claim as "not liquidated" when it is "disputed" would "allow a debtor, simply by characterizing certain claims as disputed, to ensure his eligibility to proceed under Chapter 13 in circumstances that Congress plainly intended to exclude from that chapter." In re Mazzeo, 131 F.3d 295, 305 (2d Cir. 1997); In re Claypool, 142 B.R. at 755 (holding that "[a] liquidated, noncontingent claim whose validity is in dispute must nevertheless be included in determining eligibility . . . To hold otherwise would allow debtors to bootstrap themselves into chapter 13 eligibility simply by disputing liability on the requisite amount of their claims.").

In the current case, the debt, while disputed as to liability, is liquidated. The amount can be easily determined by a review of the medical bills and expenses incurred by Mr. Campbell and paid by NCIRMA. It is without question that NCIRMA, as it has evidenced on its proof of

claim, has paid a calculable amount in workers' compensation benefits as of the date of the debtor's bankruptcy petition – $552,227.89.  While the subrogation complaint has not yet been adjudicated in Duplin County Superior Court, the success of the complaint or the existence of subsequent counterclaims does not bear on the classification of the claim as liquidated. Rather, the aggregate amount of the unsecured claim is certain and can be ascertained through a simple computation of all of the expenses incurred without the need for an extensive hearing.

Based on foregoing, the debtor's unsecured debt in the amount of $552,227.89 is not contingent and is liquidated.  Thus, this amount exceeds the $336,900.00 unsecured debt limit set forth in 11 U.S.C. §109(e). The trustee's motion to dismiss is **ALLOWED**. This ruling is stayed for twenty days to give the debtor the opportunity, if she desires, to convert her case to one under another chapter of the bankruptcy code.

"**END OF DOCUMENT**"